Good morning, Your Honors, and may it please the Court. I'm Amy Medley. I'm appearing on behalf of Defendant Xavier Becerra. I'll be splitting my time this morning with Counsel for Defendant Intervenor Sagaftra, and I would like to reserve two minutes for rebuttal. All right. Thank you, Counsel. Please watch your clock. Yes, Your Honor. AB 1687 is a very narrow statute, and it gives entertainment professionals control over their private age and birth date information when they subscribe to employment services online. For example, IMDB offers employment listings that allow potential employers to see entertainment professionals, their filmography, their past experience, maybe a demo reel, information of that nature. And AB 1687 ensures that subscribers can request that their information not be posted on their employment profile on IMDB Pro. And the IMDB has always complied with that, right, or at least for the last 8 or 9 or 10 years, and they're not arguing about that part of the statute, right? Correct, Your Honor. IMDB Pro has offered that option to its subscribers even before AB 1687. The additional provision requires that IMDB also not post the information on its public-facing website, imdb.com. So this is a restriction on specific speech content directed to a specific speaker, IMDB. Is that correct? Your Honor, it applies in the context of these contractual agreements, and it does... Wait a minute. So IMDB is a Delaware corporation with its principal place of business in the state of Washington, and I'm assuming a number of the subscribers are California residents, but not all of them. So how does the state of California have the right to regulate contractual relationships between a non-California entity and non-California residents? That's an interesting question, Your Honor. You've said it, you've posed in your brief that this is just a form of commercial speech because it's just regulating contracts, but it does more than that. It goes beyond the contractual relationship between IMDB and the subscribers to IMDB Pro. It goes to speech on the public site, imdb.com, which is not subject to any contractual relationship between IMDB and its subscribers. And even if we were looking at the Pro site, there are contractual relationships that have nothing to do with the state of California. I see your point, Your Honor. Of course, the entertainment industry is largely based here, and a lot of the subscribers themselves are in the state of California. But, Your Honor, even if we look at this as a speech restriction, we would then look to the commercial speech test, which is not what the district board does. I think what you have to do first is distinguish between the two forums. So you have IMDB Pro, and I think you have a much stronger argument that that's commercial speech. They're offering a commercial transaction. But as Judge Bennett noted, IMDB has said that they haven't published that information from that site, and they've been complying with the, what is the spirit of this, or the terms of the statute even before the statute was enacted, and they have no intent to do otherwise. So what we really need to focus on is the public platform, the imdb.com. And how is that commercial speech? How is their offering a commercial transaction in that speech? Your Honor, the fact remains that the restriction on imdb.com still only applies when there's a contract between IMDB and a subscriber. And the problem is that when IMDB- Doesn't that make your statute over-inclusive in that it restricts imdb.com from publishing all of the age and date of birth information, even with individuals who are not one of their subscribers, and with individuals who are not within the protected class for age discrimination? No, Your Honor. Even for imdb.com, the only information that would need to be removed is that information requested by a subscriber to IMDB Pro. And that information may not have come from imdb.pro, right? I mean, the IMDB site is curated by the public. They can add information. So your statute sweeps broadly to all age and date of birth information on the public site that doesn't appear to be commercial speech, and it applies even beyond these contractual relationships between imdb.pro and its subscribers. It does apply to information that might have come from a different source other than the subscriber themselves. That's true. But the fact remains that the commercial connection is that by publishing this information on the public-facing website, it's in effect being provided to the same employers that IMDB has agreed not to provide it to in the context of entertainment services. But counsel, hasn't the Supreme Court told us that classifying something as commercial speech essentially requires proposing a commercial transaction? I'm trying to understand how, on a public-facing website, putting in an actor or a writer's age, which is publicly available, and you can probably find it on Wikipedia for a lot of people, but it's publicly available. How is that proposing a commercial transaction within the way the Supreme Court described it, for example, in the Virginia State Pharmacy case? Your Honor, this is a unique case because of the connection between the employment services being provided, which under cases like Pittsburgh Press and Eaton Field v. Fane, our job employment solicitations are commercial speech. The thing that makes this case unique is that there's this added aspect of a public-facing website. But doesn't the Pittsburgh Press case stand for the proposition that the speech can be regulated if the speech itself is proposing an illegal transaction? Yes, Your Honor. The thing is here, the Supreme Court has said it would be, I can't remember the exact wording, a strange holding indeed to decide that you could restrict speech from an entity or a person because a third party might do something illegal with it. And that seems to be what you're arguing, that IMDb is not doing anything illegal in its speech, but that somebody else might take that speech and use it for age discrimination. Your Honor, it's true that the Supreme Court has noted that third party activity can't really be the sole reason for restricting speech. However, we see in the Pittsburgh Press case and various other cases that actually, I believe were better briefed in the SAG-AFTRA papers, that some restrictions have been upheld in order to achieve a particular public policy, whether it be avoiding sex discrimination, whether it be avoiding resegregation of real estate sales in a particular area. Some of those things have been, some of those restrictions have been upheld. Counsel, if I set up my own website and I have no contracts with anybody, I can publish under, this law would not forbid me, let's assume I was based in California and did everything in California, this law would not forbid me from publishing the age and date of birth of whoever I wanted, but it would prohibit the appellees from doing it. That is correct, Your Honor. If you didn't have any contracts with any subscribers, the law would not apply. But the law only applies to IMDb. I mean, Google, Wikipedia, any other site you could go to, as long as they don't have another site that has a subscription service, they can go ahead and publish all this information. It is true that this statute only applies to those offering entertainment services. I'm sorry, why is it not under- Why isn't that under-inclusive? Your Honor, I'm actually into my last two minutes, but let me try to answer your question. It isn't under-inclusive because the legislature was aiming at one particular field, and that's the offering of employment services. Other sites on the Internet that provide, might provide this information for celebrities aren't offering the same services. If the goal is to prevent discrimination in the employment context, it appears that that's really under-inclusive if that's the goal of the legislation. And it doesn't explain why you treat both sites the same. I mean, it's possible that the, and maybe even likely, that the speech on the subscriber site is commercial speech. There would still be a test that would apply. That would be the test in Central Hudson, and you'd still have to show the substantial interest in that. The restriction materially advances or substantially advances that interest, and it's not more extensive than necessary. Or it's not commercial speech, and it's subject to strict scrutiny. So either way, we'd be applying a test to see if the statute, as Judge Rawlinson has noted, is under-inclusive or over-inclusive. And I didn't see your brief take that on other than to argue in general that this is not protected speech at all, and then to suggest that lumping the two sites together, they're both commercial speech. I guess, Counselor, you don't have a lot of time, but that's my difficulty with your argument. I understand. We'll give you a minute or two for rebuttal. I appreciate that. Thank you. You're correct that if the court decides that this is, in fact, speech, you would apply either the Central Hudson test or you would apply the strict scrutiny test. We have addressed in our brief that we think the law could pass both of those. Strict scrutiny? Yes, Your Honor. No one disputes in this case that preventing age discrimination in employment and entertainment is true. That's your problem. Right. Nobody disputes your compelling interest. IMDb doesn't dispute it. But how does the statute accomplish this? The statute is very narrow, and as I said at the beginning, all it does is give employment professionals the ability to request that their age information not be published on IMDb's site. But the question is whether or not it's narrowly tailored to the end that you are trying to accomplish. The fact that it's narrow doesn't get you where you need to be, because you have to look at what your purported goal is and whether or not the statute is a good fit for those goals. Yes, Your Honor, and I am low on time. Time is irrelevant at this point. Time is irrelevant. Just answer our questions, and I promise I'll give you a minute or two. Yes, Your Honor, thank you. But another thing to keep in mind is that for a lot of the entertainment professionals we're talking about, their age information isn't simply available via Google search. We're talking about this doesn't just apply to actors and actresses. This applies to your cinematographers, your best boys, your key grips, your makeup artists, and all of them, you know, they might not have – their lives aren't a matter of public interest, and their age and birth date might not be readily available on the Internet. And so by giving them this control – But IMDb has agreed that they're not going to use any of the information they obtain from their subscribers, so they're only going to be posting on the non-pro site information that they have obtained other than from their subscribers, right? That's correct, Your Honor. I see your point. Perhaps might not be your strongest one in terms of those people. You're right. It might be that only if someone's age or birth date is available, which, you know, maybe some people's is in this day and age of information flying around the Internet, social media, data breaches. We're hardly celebrities, and I can find all of our ages on the Internet. I did notice that, Your Honor. Unfortunately. You are public figures, Your Honors. I revel in my old age. All right, counsel. We'll give you a couple of minutes for rebuttal. Thank you, Your Honor. Thank you. Good morning, Your Honors. May it please the Court. My name is Douglas Murrell of Greenberg Glusker, and I have the honor of representing the Appellant, Defendant Intervenor, Screen Actors Guild, American Federation of Television and Radio Artists. Let me address the questions that the panel seems to be most interested in, which is under-inclusivity and over-inclusivity. Let's talk first about under-inclusivity. Your Honors, IMDb in this case has argued out of both sides of its mouth. On the one hand, it touts itself, and you can see this at their brief, page 4, as the unchallenged Bible for reliable age-related information. And talent agents, including Ms. Satmarie, whose declaration appears at Excerpt 39, agrees. On the other hand, though, Your Honors, IMDb also argues that because AB 1687 impacts only IMDb and not other websites like Wikipedia, that the law is under-inclusive. We can't have it both ways, Your Honor. Well, but hasn't the Supreme Court said you can't have it both ways because the statute of strict scrutiny applies has to be neither over-inclusive nor under-inclusive? First, Your Honor, let me challenge the Court's conclusion that strict scrutiny applies. This is a commercial speech case. We believe, as Judge Baker— Why is this a commercial speech? Why is the non-pro website proposing a commercial transaction when it has a profile and it lists someone's age? How is that proposing a commercial transaction? Because as the evidence, limited as it is because of the discovery preclusion that is in fact in place in this case, the evidence is that casting directors use dynamically IMDb.com as the go-to source for finding casting. But how does that make IMDb a person offering a commercial transaction through that site? Because it has a contractual relationship with the subscriber of IMDb Pro. And remember, all we're dealing with here are restrictions that are sought to be imposed by those who are subscribers to IMDb Pro. If you're not a subscriber to IMDb Pro, this legislation has no impact whatsoever upon you. But it's under-inclusive so that the website could continue to publish that information about a myriad of people and other websites, as long as they don't have a subscription site, could do the same. Well, Your Honor, from that perspective, IMDb has it within it to free itself from these transactions if it is no longer deemed to be a companion website under the statute's definition. It could create a separate entity which, if it were not a sham creation, could operate as Wikipedia does. But it doesn't do that. But I'd like you to get back to how is on the IMDb non-pro site, how is that commercial speech when they are simply publishing information and they're not charging anyone to access it? And to follow up with what Judge Ben is asking you, your answer to that question was because IMDb has contracts with subscribers for information on a different site. That, to me, doesn't answer why the IMDb.com site is commercial speech. The IMDb.com site is commercial speech for the reason I think I indicated at the outset, which is that it is the source per the declarations we have submitted. So if you're successful, that means your speech is, if you're popular, that makes it commercial speech. Is that the test for commercial speech? No, it's not a question of popularity. It's a question of what is the site used for. And it's used by casting directors in order to effectively preclude people from being able to get a part, even though they may be able to portray a particular age that is either younger or significantly older. So that doesn't answer or say that that speech is commercial speech and would be subject to less scrutiny rather than strict scrutiny. What you're arguing is that if IMDb is engaged in protected speech, you can nonetheless place a restriction or California can place a restriction on that speech because a third party might use it for some illegal conduct. That's your argument, as I understand it. Well, Your Honor, and that's precisely what has happened in the Supreme Court's case in Pittsburgh Press. In the Pittsburgh Press case, there were advertisements that were proposing basically men-only jobs and women-only jobs and a category of either. So the Pittsburgh newspaper was getting paid to sort advertisements in categories that were directly promoting illegal conduct. How is this similar? Because in Pittsburgh Press, Your Honor, it was the employers who were making the determination about whether they would hire or not hire based upon those categorizations. Here, it's precisely the same situation. Employers are making a determination about whether or not to allow someone to audition for a part based upon the information that's being promulgated by IMDb.com on the site the casting directors go to. So outside of the existence of this statute of 1687, is it illegal for a site like IMDb.com or Wikipedia or Google or any other site to post somebody's age and date of birth? Not that I'm aware of, Your Honor. So IMDb is not engaged in any illegal activity by posting that information, and so I don't see how that speech is like Pittsburgh Press. It's not speech proposing an illegal transaction. Well, Your Honor, the notion of speech proposing an illegal transaction is not the test. The cases that we've cited, including Barrick Realty v. City of Gary, as well as the Reagans v. New York Times case, establish that even if you have, in the case of Barrick, a for sale sign posted on a home, that act could be considered an act of racial discrimination if it occurs in a community where panic selling has occurred and resegregation is a possibility. So you rely pretty heavily on the Barrick case in your brief, but how do you reconcile that with the Supreme Court's decision in Landmark Associates which struck down on First Amendment grounds a nearly identical regulation three years later? Well, Your Honor, there have been subsequent decisions, including the cases that this Court has decided that establish that what is going on is commercial speech. And if it is commercial speech, then that's what the Court will find to be improper. So what we believe, too, is that beyond Barrick, there have been other cases decided 17 years after that which establish the same proposition so that it is not necessary that the issue be whether or not the information is there as truthful. It may or may not be truthful. And in this case, by the way, we don't have any assurance because, again, we have been precluded from undertaking any discovery about whether the information that actually appears on IMDb is or is not truthful. Now, that may not be necessary for this Court to reach in terms of concluding this decision, but it is relevant to determining whether or not there is under-inclusivity or over-inclusivity in connection with the Court's concerns. Counsel, what's your response to the argument that there are more direct and effective ways to counter age discrimination, namely laws that are already on the books, including fair employment laws, both state and federal? What's your response to that argument that this is not the most efficient or effective way to promote the aims that are articulated in the legislation? Your Honor, first, I don't believe it's this Court's place to be second-guessing the legislature in this regard. Well, as part of our analysis as to whether or not it passes strict scrutiny, we have to determine whether or not the means fits the ends. And so that's a question that's incorporated into that inquiry. So we're not second-guessing the legislature. We're doing our job to determine whether or not this legislation is constitutional. No, I understand that, Your Honor. But the point I'm making is that the legislature, in its analyses, determined that the laws that are currently on the books are simply ineffective and that what happens in real life as a result of the existence of imdb.com is that casting directors are doing something now that they never did before. Previously, they would take the information that a particular actor or actor's agent provided to them and that information typically would not include age information. And the reason for that is that portrayable age is the relevant consideration rather than chronological age. But that's not what imdb permits one to do. imdb essentially creates a template by which age discrimination is facilitated by presenting that age in a prominent and conspicuous fashion near the very top of every imdb.com listing. And, Your Honor, I apologize. I appear to be out of time. All right. Thank you, Counsel. Good morning, Your Honors, and may it please the Court, John Huston on behalf of imdb.com. Your Honors, we are here because in 2016, the State of California passed a law that outright prohibited certain disfavored yet factual speech by a single speaker. As the District Court rightly observed, the parties do not dispute a number of remarkable facts here, some of which have been cited by Your Honors. First, that AB 1687 specifically targets only one speaker, imdb. Secondly, that AB 1687 censors truthful, factual information about birthdates and ages of those in the entertainment industry which are publicly available facts. Three, during the drafting of the legislation, the legislature itself conceded that there were serious First Amendment concerns raised by the law, and that's in Excerpt of Record 204 and 205. And fourth, because birth records are public records in California, the State has already deemed date of birth information to be a matter of public interest. The legislature, nevertheless, passed content-based restrictions on speech. Critically, and Your Honors were questioning Counsel about this, the State has the burden to establish the constitutionality of 1687, but has provided no credible evidence that 1687 is narrowly tailored to the objective of precluding or limiting age discrimination, and plainly it is not. The State and SAG's justifications and interpretations of First Amendment jurisprudence is contrary to decades of Supreme Court and Ninth Circuit cases. They would rewrite a number of those cases to even include the Brandenburg case. Counsel, what's your response to both opposing Counsel's observation that this is commercial speech? Thank you, Your Honor. It is clearly not commercial speech. To go to the Bulger's definition of commercial speech, the core notion of commercial speech is speech that does nothing more than propose a commercial transaction. And Bulger laid out three point tests that had to be made. First, the speech had to be an ad. Second, the speech has to refer to a specific product. And thirdly, there has to be an economic motive to the speech. Is it your argument that only ads are commercial speech? No, Your Honor, that's just one of the prongs. But clearly here... We don't reach Bulger unless it's a close question. Sorry, Your Honor? You don't reach the Bulger test unless it's a close question whether the speech is commercial speech. Right, and it's not a close question here at all. SAG and the Attorney General would like you to remain in the context of IMDpro. And as Your Honors have remarked, we're in the realm of imdb.com. And to be clear, imdb.com is not an employer database. It is one of the world's most visited websites. It receives 250 unique visitors per month. It has listings regarding movies, TV shows, all sorts of data. Not solely casting directors or people who are looking to populate movies, right? No, not at all. It is a vast publicly available database, which is open to submissions like Wikipedia from other third parties who in fact do populate those websites and have the IMDb website and have done so for 20 years. Do we have a case or controversy with respect to imdb.pro? Your complaint appears to challenge the statute in its entirety as applied to the subscription service site and the public-facing site. But your brief indicates that you haven't published that information on imdb.pro for quite some time, that you honor subscribers' requests not to have that information published on that site, the pro site, and that you have no intention of doing so in the future. So why isn't that part of your argument moot? Why are we dealing with that argument? Well, Your Honor, it's a very important point if I'm following your question that within imdb.pro, if this were a statute that were only focusing on imdb.pro and you had a contract, and this would bring the court within the realm of the Cohen case, which is what the petitioners have cited, if you were in the context of imdb.pro and if there was a contract there where there was an agreement that the date of birth information were to be kept confidential by imdb.pro, and then imdb.pro on its own disregarded that contract and made it public, well, then we would have an issue here. But, of course, that is not the case, and the statute has swept very broadly to imdb.com well beyond the pro site. Counsel, as you stand here today, are you seeking any relief with regard to the statute that governs that would be applicable only to imdb.pro and subscribers with whom you have contracts who request that you remove age-related data from the imdb.pro posting? Well, Your Honor, yes, because although the point is effectively moot, the statute is still unnecessary. But what is the relief you're seeking as to imdb.pro? What's the relief specifically? We are enjoining the enforcement of AB 1687 as drafted, which would include very broadly imdb.pro and imdb.com. Now, imdb.pro is not facially practically an issue here because they are simply abiding by any requests from subscribers, but I think it's very important that the statute itself be recognized as one that is simply unnecessary, over-inclusive, and under-inclusive, even with its attempts as focused on imdb.pro. Have the state or SAG at any point in the proceedings before the district court or here argued that the statute is severable? No, we have not made that argument, Your Honor. No, they have not made the argument at all that it's severable. They are seeking, clearly, a broad prescription on imdb.com and imdb.pro, and they've taken the untenable position that somehow that is necessary and not over-inclusive and under-inclusive, and that is the fatal failing that they have because clearly we are dealing with strict scrutiny because we have a content-based regulation that appears not to be in dispute. 1687 clearly singles out specific factual information. It is noncommercial speech because it is simply not enough. Their best argument that it's commercial speech is, well, one of the bulger factors involves an economic motive, and one could make a creative argument that, well, imdb.com has ads on its website, so maybe that's a sufficient motive. But this court, Index Media, has answered that question. There, there was a publication of yellow pages with subscriber information, numbers, and names, and there, even though it was a for-profit publication, this court made clear that that wasn't sufficient to call it commercial speech. Here with imdb.com, we are far removed from that because it is a broad public database that is freely accessible with a much more attenuated economic motive. Does some of the information that is on imdb.com come from the subscriber information that you receive for imdb.pro? Your Honor, the information comes from multiple sources, and it could include information that, once it's on imdb.pro, it is part of the public domain. But I think it's critical that the evidence in the record, including what is recognized by the California legislature, is that the information is being populated by third parties into imdb.com. Birth date information is publicly available information. A mere request to the county recorder's office or other entities, it is available. Counsel, I thought the record showed that imdb agreed that if the only source for a subscriber's birth date information was from the subscriber, that you would not use that to populate the imdb.com. Am I misremembering?  What imdb has agreed to do, imdb.pro has agreed to do, is to remove information if the subscriber has put it there. Remember, it's the subscriber's choice. They sign up for imdb.pro. They don't have to put birth date and date of birth information. And, in fact, neither of the petitioners have asserted that everyone does. So that's point number one. Point two is, if they put it on there and then later decide, well, I'd rather not have it on there, it can be removed. So your answer to the question is it would be removed only if it were provided by the subscriber. But if it were provided from a third source, it would not be removed. Well, I want to make sure I'm answering that accurately, Your Honor. So if a provider provides date of birth information on imdb.pro, it is part of the public domain. If that subscriber later requests, I'd like it removed from imdb.pro, imdb.pro will do so. But if that date of birth information has otherwise populated in the public and it is part of imdb.com, there will be no effort by imdb.pro to reach into imdb.com. If the subscriber requested it. That's right. And that's precisely why, Your Honor, this law is oversweeping. Because in any instance, as the law is drafted, the imdb.pro subscriber can make a request and automatically, no matter how the information has been populated on imdb.com, it must be removed. The hypothetical that you have just provided is just that. It is not what the law contemplates. It wasn't a hypothetical. It was a question. I just wanted to know what your position was. Yes, Your Honor. So I guess the reason we're interested in this, or I am anyway, is because there seems to be a suggestion of misappropriation of information from contracts that if a subscriber signed up for imdb.pro and either didn't include their information or did and then later requested that it be removed, that imdb.com would be the actual entity that would take the information from the pro site and put it on the public site. I understand that the site on the public site could come from anywhere. Other people can populate the site. So that may not be where it's coming from, and I think that's what is causing us some confusion. Is imdb.com taking information from the pro site and putting it on the com site? imdb.com takes information wherever it is in the public domain, and that may include imdb.pro. And, Your Honor, let's run with that for a moment and see where that takes us in terms of First Amendment jurisprudence. If that were to be enough, under their facilitation argument, which misconstrues the Pittsburgh press jurisprudence, we would have a situation along the following lines, where virtually all speech would be censorable. If I signed up to get the New York Times and gave them my information, and let's say I gave them my name, date of birth information, and there was even a contract provision there that said you can't use my information pursuant to my subscriber information in your New York Times content, and a similar law was passed here, if I later ran for office and the New York Times obtained my information from a third-party source, they couldn't put my age in the New York Times because I would be allowed to argue, well, as a subscriber, I provided it earlier in time to the New York Times, I have the right now to preclude forever the New York Times from ever publishing this, even though that information is available elsewhere. We have a similar situation here. Another situation under this unending facilitation rule that I would bring to the Court's attention would be a situation like with Facebook. In Facebook, which has billions of subscribers, many people often put not only where they live, but their hometown. Well, it is forbidden to discriminate based on national origin. Under the logic and case law that they are attempting to assert here, Facebook would be forced to remove all hometown and origin information across millions of subscribers because there can be an argument that by doing so that would help facilitate the objective of limiting national origin discrimination. That's the slippery slope that we're on here with the arguments from the AG and with SAG. To address, Your Honor, the facilitation points, which were argued at length here, counsel on both sides have cited the Barrick Realty case versus City of Gary, a 1974 Seventh Circuit case. And briefly and factually, Your Honor, that one simply proposed a commercial transaction for sale signs with properties. And I will note that that case has not been cited at all for 20 years and not for 30 years for First Amendment jurisprudence. But more importantly, this is much ado about nothing here in this Court because Vial del Sol is the 2013 Ninth Circuit case which put an end to the debate about what Pittsburgh Press could and should mean by simply stating that the state can regulate speech and interpreting Pittsburgh Press that proposes or constitutes illegal activity. That is the proper construction of Pittsburgh Press. And with that proper construction, that is fatal to the positions of the AG and SAG. I want to also point out that if the Court considered the facilitation rule that the AG and SAG is pressing, it would effectively swallow the iconic decision of Brandenburg. And I enjoyed going back and reading this case. It was like going back to law school again. That's the iconic 1969 case, which considered when can you properly censor speech in the narrowest of circumstances but in compelling circumstances when the speech poses a danger to public safety. Even then, the Court required the most narrow of tailoring. It would only happen when directed to speech that was imminently inciting lawless behavior and likely to incite and produce lawless behavior. If we take the new construction that the AG and SAG is urging upon this Court, it would wash away Brandenburg and its narrow limits. It simply can't be the case. And this Ninth Circuit jurisprudence has made it clear that we are on a much narrower pathway. The entire premise that they have pressed, and Your Honors have cited this, is fear of third-party use. That has been repeatedly rejected by the Supreme Court, and in particular the Sorrell case, which is one of the most analogous cases here in terms of discrimination, censorship of speech, and of single speaker. And the Sorrell case clearly stated you cannot achieve quote, policy objectives through indirect means of restraining certain speech. End quote. And the Bartnicki Supreme Court case held the same. So Counsel, is there a way that the Court could reconcile the privacy interests that are at stake with IDBM's First Amendment interest? Your Honor, that is another argument that has been brought up, and Your Honor, there is no special safe harbor for what can be broadly construed as private speech. First of all, it's not private speech. So factually, we are not in a situation of private speech. We're talking about public information. In the state of California, birth records being public and the information broadly apparent. Well, Counsel, I understand where you're going, and I understood your argument in the brief, but the way I read their argument with respect to privacy interest was that it was another argument of a compelling state interest. So they have the compelling state interest to prevent age-based discrimination, and they seem to be arguing there's a compelling interest in certain private information that typically the state would want to protect to prevent identity theft. And if that's the case, if they're not carving out a separate area of speech, private speech is not protected, then I think we'd be back to strict scrutiny. We'd just have another compelling interest. Exactly. That is exactly right. So even if we credit them with another compelling objective, privacy, we would be right back to strict scrutiny, and they would be unable to show that the law is necessary. As the district court noted, there was not any effort by the attorney general to show that efforts to further enforce the law, to pass enforcement protocols against the perpetrators of age discrimination, which is the conventional way to regulate, that any effort has been made. So it was both unnecessary and even with a concession that privacy interests are key and critical, still would be over-inclusive and under-inclusive in the ways that we outlined. And I'll just finish my last couple of seconds by citing and reminding the court of the Florida Star case and the Daily Mail Supreme Court case, where in much more egregious circumstances where you had the names of rape victims and the compelling privacy interests of protecting the identity of a juvenile offender, that was not sufficient to repulse the First Amendment analysis. All right. Thank you, counsel. Ms. Medley, we'll give you two minutes for rebuttal. Thank you, Your Honors. Thank you, Your Honors. I'd like to address first the question of whether birth date information is actually public information. It's true that at least in the state of California,  you are able to request, for example, an informational copy of someone's birth certificate. However, having to go through that process, having to request it from a state office or a county office, wait for it, pay a fee, is qualitatively different than typing into Google someone's name and instantly having their age pop up. The case Department of Defense versus Federal Labor Relations Authority points out that people don't lose their privacy interests just because their information becomes public in some one format or another. And the big, the crux of this is the availability of this information over the Internet. What AB 1687 is trying to do for the entertainment industry is maintain the protections in the Fair Employment and Housing Law, which prohibits potential employers from inquiring into an applicant's age. But California has the ability to change its laws so that you could not obtain an informational copy of a birth certificate. They haven't done that. So even though you say it's more cumbersome to obtain the information, that would suggest that this law is directed only at IMDb. It's directed to specific content and to a specific speaker. How is that not subject to strict scrutiny? Your Honor, you're correct that the state could change that law. I don't know whether there's any movement to do that or not. But the fact is that the laws that we had prohibiting potential employers from asking for this information, they just aren't working the same way in this age of the Internet where a company like IMDb can make this information publicly available to everyone, including all potential employers. Counsel, I just have, we, I don't think you've argued in your brief that the law is severable. Are you arguing now that the law is severable or that IMDb doesn't have standing to challenge the portion of the law that's directed only to the IMDb pro-site? Your Honor, we did not argue that in any of the briefing. I don't think the issue of severability really came up. I'd be happy to offer a supplemental briefing on that if you'd like. But I will say that the fact is that treating the two sites as interconnected with one another, the idea is that regulations on IMDb pro, on that employment services site, just will not be effective unless the information can also be prohibited from being published on the IMDb.com public-facing site. All right, thank you, Counsel. You've exceeded your time. Thank you to all, Counsel, for your helpful arguments in this case. The case just argued is submitted for decision by the court.
judges: Rawlinson, Bennett, Bade